1. SERVICES RENDERED DECEDENT—PRESUMPTIONS.
   Services rendered by two daughters to their father while living with him in the family relation are presumed to be gratuitous.

2. WITNESSES—COMPETENCY.
   Where two daughters claim independently of each other for services rendered their deceased father, either one is competent, under Code Civ. Proc. § 829, to testify, in behalf of the claim of the other, that she heard her deceased father agree to give them, if they stayed and worked for him, whatever was left.

3. ADMINISTRATRIX—PAYMENTS—TAXES AND INTEREST.
   Where an administratrix illegally pays out of the personalty taxes and mortgage interest accruing after her intestate's death, she is entitled to be reimbursed by the other heirs out of the realty.

In the matter of the estate of John H. Sworthout, deceased. Judicial settlement of the account of the administratrix. Decree rendered.

John K. Ward, for administratrix.

E. D. Northrup, for claimants Ada Parker and Mary Hasper.

DAVIE, S. The principal controversy upon this settlement relates to the claim of Emma Sworthout, the administratrix, and the claim of Cora Winsor, against the estate. The claim of Cora Winsor was presented to the administratrix, duly verified, and allowed by her, in writing, at the amount for which the same was presented, to wit, the sum of $250. Such claim not having been paid, and the allowance of the same having been objected to by certain of the heirs at law and next of kin appearing as aforesaid, it was stipulated that the same be heard and determined upon this accounting.

The decedent died intestate at the town of Mansfield on the 4th day of December, 1895, leaving him surviving his widow, one son, and four daughters, his only heirs at law and next of kin, and all of whom

76 N.Y.S.—61

are of full age. At the time of his death the decedent was the owner of a small amount of personal property, consisting of stock, horses, and farming utensils, and owning a farm in the town of Mansfield of the value of about $1,500. The decedent during the latter part of his life was to some extent in poor health, and unable to attend to his usual business matters without assistance. The daughter Cora remained at home during the greater portion of the time after she became of age down to the time of the death of her father, and rendered services in the household of the decedent, and assisted him to some extent in his work upon the farm. The other daughter, Emma Sworthout, also remained at home a portion of the time after she became of age and rendered services of a similar character. These daughters were not usually both at home at the same time. The witness C. J. Thayer testified as follows:

"Usually one at home, the other away. Cora was there the greater part of the time. When she went away, Emma would come. They were employed mostly about housework there on the premises. They did work in milking, getting cows, etc. I saw them do housework; milk; get the cows; help their father draw hay and oats once in a while. This continued during the entire period of my residence there."

The witness Grace Thayer testified to substantially the same state of facts, and the fact of the daughters doing work is fully established by the evidence of several other witnesses. These witnesses, however, testify that the girls resided at home as members of their father's family. Under such conditions, the presumption arises that such services as were rendered by them for the decedent while they were members of his family were gratuitously rendered, and the burden is imposed upon the claimants of overcoming such presumption and of showing that such services were rendered with an understanding on the part of the decedent that they were to be paid for. For the purpose of overcoming such presumption, several witnesses were called, who testified to declarations upon the part of the decedent indicative of an intent on his part to make such payment. The witness George Thayer testified as follows:

"I had conversation with him [decedent] one time in lot while drawing hay. Emma was helping. I said, 'This is a slow way to hay it,' and he said 'Yes.' I said, 'You ought to draw that boy in and help,' and he said, 'No; the girls are all the help I want. The farm will not support hiring. I have to do it myself.' I said, 'If those girls take hold as they do, you ought to give them every cent you have got.' He said, 'I intend to.' I asked him if he was not getting sick of farming. He said, 'Yes; it didn't pay the expenses, with his labor and the girls. He told me that he couldn't pay his taxes and other debts if Emma didn't help him."

The witness Alexander Milks testified as follows:

"I knew the decedent for thirty years. Joined farms with him. During last few years of his life Cora and Emma were at home more or less. We used to visit when my wife was alive. We were there. He said that they were pretty badly in debt; wanted the two girls to stay at home and straighten up affairs, and have what was left. He said that the girls had stayed at home and worked there, and that they had worked out and brought the money home."

These statements upon the part of the decedent were insufficient to establish a liability against his estate for the services rendered;

and the administratrix, Emma Sworthout, was examined as a witness in support of her sister's claim, and she was asked the question if she had at any time heard any conversation between the decedent and her sister in regard to her sister's work. This evidence was objected to upon the ground that the witness was incompetent under section 829 of the Code, the objection being fully and specifically stated. The question, when asked, was proper in form, and this witness was not incompetent to testify to any transaction between the decedent and her sister Cora relating to her sister's claim. She answered the question by testifying as follows: "I heard him [the decedent] say that, if we [meaning herself and Cora] stayed there and worked, we should have what he had left after his death." The claimant Cora Winsor was examined as a witness in support of the claim of her sister Emma, and was asked substantially the same question, which she answered in the same manner; testified that she had heard her father say that, if she and her sister would stay at home and do the work, they should have what there was left after their father's death.

After this proof was made, and its character established, a motion was made on behalf of the contestants to strike out the same on the ground that it had appeared that the witnesses were incompetent under section 829 of the Code; that the promise to them was in the nature of a joint promise, and that they were each personally interested in the same transaction, the same being a personal transaction with the deceased; and that they were incompetent not only to testify in regard to their own claim, but also incompetent to testify in regard to the claim of the other. The decision of this motion was withheld until the final determination of the case, under the stipulation that the question of the admissibility of the testimony should then be determined, and the proper exception given. The proceedings to establish the personal claim of the administratrix against the estate is entirely separate and dependent from that to establish the claim of the other daughter, Cora Winsor. In other words, they occupy the same position as if an action had been originally brought by each of these claimants to recover the amount of their respective claims against the estate. If joint action had been brought for a specific performance of this contract which was claimed had been made by the father, to the effect that, if the girls would remain there and work during the balance of his lifetime, they should have what might remain of his estate, then it is entirely clear that both of these witnesses would be incompetent to testify. But such is not the case. They are neither of them seeking to recover the residue of the estate, nor seeking to enforce any specific promise made to them jointly, but are each seeking to recover upon the quantum meruit; and the only purpose of making this proof was to show an understanding or an intention upon the part of the decedent that the services rendered by them respectively were not gratuitous. In other words, it was to overcome the presumption which would otherwise have existed. After carefully examining the question, I am of the opinion that the evidence was competent, and that the motion to strike out the same should be denied, with the proper exception to the contestants. The services ren-

dered by the claimants for their father were valuable and meritorious in their character; were well worth the amount specified in the findings herewith submitted.

There are certain items, however, contained in the account of the administratrix filed for settlement in this proceeding, which cannot be allowed. The mother of the administratrix survived her husband, the decedent in this case, several years. Her funeral expenses were paid from the personal estate of the decedent, and are credited by the administratrix in her account filed as a charge against the estate. Technically, such charge was an improper one. It would seem that the contestants, as a matter of morals and equity, were hardly justified in objecting to this claim; but, as a legal proposition, such objection is tenable, and that item of the account cannot be allowed. At the time of the death of the decedent there was an incumbrance upon his farm by way of mortgage. The administratrix has paid two payments of interest upon such mortgage, of $33 each; also certain taxes which have been assessed against the premises since the death of the decedent. These payments were unauthorized. The administratrix had no authority to pay such interest as accrued after the decedent's death upon this incumbrance, or the taxes, out of the personal assets of the estate. While she undoubtedly would be entitled to be reimbursed for such payments out of the proceeds of the sale of the land, as between herself and the other heirs to whom such land descended, she did not have the right to make such payments out of the personal assets of the estate.

Decreed accordingly.